IN THE UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

**David Fox and Shannon Fox,**

**Plaintiffs,**

v.                                                    **Case No. 05-2475-JWL**

**BNSF Railway Company,**

**Defendant.**

## MEMORANDUM & ORDER

Plaintiffs filed suit alleging that defendant BNSF Railway Company (hereinafter "BNSF") violated the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., when it withdrew conditional offers of employment for conductor trainee positions based on the results of standard post-offer, pre-employment medical examinations. This matter is presently before the court on defendant's motion for summary judgment (doc. 22). As explained below, the motion is denied with respect to both plaintiff's claims.[1]

I.      **Facts**

The following facts are undisputed or related in the light most favorable to plaintiffs, the non-moving parties. Plaintiffs David and Shannon Fox are brothers who each took a six-week conductor trainee class at Johnson County Community College in the summer of 2004. The

---

[1]The parties agree that each plaintiff's claim is separate and distinct from the other plaintiff's claim (there is, for example, no evidence that BNSF was aware that plaintiffs were related to each other or that BNSF's decision with respect to one plaintiff had any bearing on BNSF's decision with respect to the other plaintiff) such that the court should consider separately the claim of plaintiff David Fox from the claim of plaintiff Shannon Fox.

course was sponsored by the National Academy of Railroad Sciences and was taught primarily by employees of BNSF. The course involved a mix of classroom and field work, including a two-week period requiring students to work "in the yard" performing the physical duties of a conductor trainee. Each plaintiff contends that, during the six-week course, he performed without pain all of the physical requirements of the conductor trainee position. After successfully completing the course, each plaintiff separately applied for and received from BNSF a conditional offer for a conductor trainee position. Each plaintiff was informed that the offer of employment was contingent on several factors, including the favorable outcome of a physical examination.

On September 21, 2004, David Fox went to Concentra Medical Center in Lenexa, Kansas for his BNSF post-offer, pre-employment examination. On or about September 30, 2004, BNSF's chief medical officer, Dr. Michael Jarrard, reviewed the results of the examination, including medical records that had been provided to him.[2] The records provided to Dr. Jarrard reflected that David Fox, in July 2002, had lumbar spine fusion surgery. David Fox does not dispute that he had lumbar spine fusion surgery and that the surgery was required to realign and reattach vertebrae in his back. Based on the fact that David Fox had a prior lumbar spine fusion, Dr. Jarrard concluded that David Fox was not "medically qualified" for a "train service" position. Train service positions include the conductor trainee position as well as the conductor

---

[2]Dr. Jarrard did not personally examine David Fox or Shannon Fox.

and brakeman/switchman positions.[3]  According to Dr. Jarrard, David Fox's medical condition, combined with the physical requirements of the conductor trainee position, presented a significant risk of future injury to David Fox.  Specifically, Dr. Jarrard was concerned about the potential for injury associated with the frequent bending and throwing of switches, as well as the carrying of knuckles, which generally weigh more than 80 pounds, both of which are required elements of all train service positions.

On October 1, 2004, BNSF advised David Fox that it was rescinding its conditional offer of employment.  Shortly thereafter, David Fox contacted Art Freeman in BNSF's Human Resources department asking for a written explanation of BNSF's decision to withdraw its conditional offer of employment.  According to David Fox, he also asked Mr. Freeman to explain to him what it meant to be "not medically qualified" for a position, to which Mr. Freeman responded, "Well, because you are disabled, even though you're not really disabled, you know, it's not like you physically can't do anything . . . medically you would be considered disabled because of your surgery."  David Fox further alleges that Mr. Freeman advised him to seek other positions that were "not physical."[4]

On October 28, 2004, Shannon Fox went to Concentra Medical Center for his post-offer,

---

[3]The Concentra examining physician found no medical reason why David Fox should be precluded from the conductor trainee position.

[4]While the court includes in its statement of the facts David Fox's evidence concerning his conversation with Mr. Freeman, the court has not considered that evidence in resolving defendant's motion for summary judgment as summary judgment is not warranted regardless of Mr. Freeman's statements.

pre-employment examination.  In early November 2004, Dr. Jarrard reviewed the results of Shannon Fox's examination, including medical records that had been provided to him.  The records provided to Dr. Jarrard reflected that Shannon Fox had right shoulder arthritis pain and joint laxity.  Shannon Fox does not dispute that he sustained an injury to his right shoulder sometime prior to June 2004, when he sought treatment due to pain, popping and grinding in the shoulder.  At that time, his physician advised him that he had strained his shoulder.  In August 2004, Shannon Fox was still having pain in his right shoulder and visited a specialist, who advised him that he had "mild instability" and rotator cuff tendinitis in the shoulder.  In light of Shannon Fox's shoulder condition, coupled with the Concentra examining physician's assessment that Shannon Fox's risk of future injury, aggravation or recurrence of his shoulder condition was "probable with repetitive heavy work," Dr. Jarrard concluded that Shannon Fox was not qualified for a train service position, including the conductor trainee position. According to Dr. Jarrard, Shannon Fox's shoulder condition, combined with the physical requirements of the conductor trainee position, presented a significant risk of aggravation, recurrence or reinjury to Shannon Fox.  Specifically, Dr. Jarrard was concerned about the potential for injury associated with the need to ride on moving railcars while holding onto a ladder with one arm, a required element of the conductor trainee position.

Since October 2004, David Fox has not sought health care for his back and he has not experienced any pain or problems with his back.  During that time frame, he has assisted in construction projects in which he has lifted numerous 80-pound bags of concrete and has operated a jack hammer.  Shannon Fox is self-employed as a carpenter and has not been

4

precluded from working as a carpenter for any period of time after injuring his shoulder.

## II.    Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.  *Lifewise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).  An issue is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Id.* (citing *Anderson*, 477 U.S. at 248).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).  In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id.* (citing *Celotex*, 477 U.S. at 325).

If the movant carries this initial burden, the nonmovant that would bear the burden of persuasion at trial may not simply rest upon its pleadings; the burden shifts to the nonmovant to

go beyond the pleadings and "set forth specific facts" that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant. *Id.* (citing Fed. R. Civ. P. 56(e)). To accomplish this, sufficient evidence pertinent to the material issue "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein." *Diaz v. Paul J. Kennedy Law Firm*, 289 F.3d 671, 675 (10th Cir. 2002).

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1); *see also Kaster v. Safeco Ins. Co. of Am.*, 2003 WL 22854633, at *2 (10th Cir. Dec. 3, 2003) (affirming the district court's grant of summary judgment in favor of defendant in an ADEA case where the plaintiff had failed to present evidence sufficient for a reasonable jury to conclude that Safeco's employment decisions were age-related); *Young v. White*, 2003 WL 21940941, at *1-2 (10th Cir. Aug. 14, 2003) (affirming district court's grant of summary judgment in favor of defendant in race discrimination and retaliation context).

## III.     Discussion

In the pretrial order, plaintiffs separately allege that BNSF regarded or perceived them as disabled under the Americans with Disabilities Act when BNSF withdrew its conditional offers of employment for conductor trainee positions based on the results of standard post-offer,

pre-employment medical examinations.  As plaintiffs have no direct evidence of discrimination,[5] their claims are analyzed using the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See MacKenzie v. City & County of Denver*, 414 F.3d 1266, 1274 (10th Cir. 2005).  Under the *McDonnell Douglas* framework, each plaintiff has the initial burden of establishing a prima facie case of discrimination.  *See id.*  If he establishes a prima facie case, the burden shifts to defendant to articulate a legitimate, nondiscriminatory reason for taking the adverse employment decision with respect to that plaintiff. *See id.*  If defendant offers a legitimate, nondiscriminatory reason for its actions, summary judgment against that plaintiff is warranted unless he shows that there is a genuine issue of fact as to whether defendant's reason is pretextual.  *Id.*

BNSF moves for summary judgment on each plaintiff's claim on the grounds that neither plaintiff can establish a prima facie case of disability discrimination.  To establish a prima facie case under the ADA, each plaintiff must establish that (1) he is a disabled person as defined by the ADA; (2) he is qualified, with or without reasonable accommodation, to perform the essential functions of the job held or desired; and (3) BNSF discriminated against him because of his disability.  *See id.* (citing *Butler v. City of Prairie Village*, 172 F .3d 736, 748 (10th Cir. 1999)).  In its motion for summary judgment, BNSF contends that neither plaintiff can establish the first element of his prima facie case.

---

[5]David Fox does not suggest that the comments Mr. Freeman allegedly made to him constitute "direct evidence" of discrimination.  *See Walker v. Faith Tech., Inc*., 344 F. Supp. 2d 1261, 1270-71 (D. Kan. 2004) (explaining, with reference to Tenth Circuit precedent, type of evidence that constitutes direct evidence in context of employment discrimination cases).

In showing that he is a "disabled person as defined by the ADA" for purposes of establishing the first element of his prima facie case, each plaintiff must show that he has a physical or mental impairment that substantially limits one or more of his major life activities; that he has a record of such an impairment; or that he is regarded as having such an impairment. *See id.* at 1275.   Here, each plaintiff proceeds only under the "regarded as" definition of disability.   A person is regarded as disabled when his or her employer (or, in this case, prospective employer) mistakenly believes that the employee (or, in this case, applicant) has a physical impairment that substantially limits one or more major life activities, or when his or her employer mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities. *See Kelly v. Metallics West, Inc.*, 410 F .3d 670, 675 n.5 (10th Cir. 2005) (citations and quotations omitted).

Plaintiffs contend that BNSF regarded each of them as substantially limited in the major life activity of working.   Pertinent EEOC regulations state that "[w]ith respect to the major life activity of working," the phrase "substantially limited" means "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." *EEOC v. Heartway Corp.*, 466 F.3d 1156, 1162 (10th Cir. 2006) (quoting 29 C.F.R. § 1630.2(j)(3)(i)).   "The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." *Id.* (quoting 29 C.F.R. § 1630.2(j)(3)(i)).   Thus, to prevail on his "regarded as" claim, each plaintiff is required to prove by a preponderance of the evidence that BNSF treated each plaintiff's impairment as "significantly restricting" his "ability to

8

perform either a class of jobs or a broad range of jobs" as compared to similarly trained persons. *Id*.

Recently, the Tenth Circuit, while acknowledging that bright-line standards do not exist, examined "the question of what constitutes a 'class of jobs' or 'broad range of jobs in various classes.'" *See id.* at 1163. With respect to a "class of jobs," the Circuit, looking to the Supreme Court's decision in *Sutton v. United Air Lines, Inc*., 527 U.S. 471 (1999), explained that if "jobs utilizing an individual's skills (but perhaps not his or her unique talents) are available, one is not precluded from a substantial class of jobs." *See id.* at 1164 (quoting *Sutton*, 527 U.S. at 492). The Circuit also noted the EEOC regulations and interpretive guidance stating that "heavy labor jobs," "jobs that involve manual labor," "semi-skilled jobs" and "jobs requiring use of a computer" are classes of jobs. *See id.* at 1163 n.6. Ultimately, the Circuit determined that a plaintiff attempting to show that an employer regarded his or her impairment as significantly restricting his or her ability to perform a class of jobs must prove that the employer treated the impairment as significantly restricting both the job from which he or she was disqualified as well as jobs utilizing similar training, knowledge, skills or abilities within his or her geographical area. *See id.* at 1164. In so doing, the Circuit also suggested its agreement with the EEOC's conclusion that the requirement that the relevant jobs constitute a "class of jobs" is not intended to require an "onerous evidentiary showing." *See id.* (quotations omitted).

Clearly, the evidence in the record is sufficient to show that BNSF viewed each plaintiff as substantially limited in his ability to perform the conductor trainee position; indeed, BNSF does not dispute this fact. The critical question presented in this case is whether BNSF viewed

9

each plaintiff as substantially limited in his ability to perform other jobs utilizing similar training, knowledge, skills or abilities within his geographical area.   While the question is a close one, the court believes that each plaintiff has set forth sufficient evidence for a jury to conclude that BNSF treated each plaintiff as significantly restricted in his ability to perform other jobs, in addition to the conductor trainee job.  Specifically, a jury could reasonably view Dr. Jarrard's testimony (presented at this juncture via affidavit) as showing that BNSF believed that each plaintiff was restricted in his ability to perform the physical demands of numerous other jobs at BNSF.

With respect to David Fox, Dr. Jarrard averred that the bending and carrying requirements associated with the train service positions from which David Fox was medically disqualified were also required in a number of other jobs with BNSF, including freight carman, gang trackman, maintenance section foreman, B&B mechanic/carpenter, extra gang trackman, senior special agent, patrolman and structure laborer.  While BNSF has not provided any evidence concerning the nature of these positions, most of the job titles suggest that the positions, consistent with the bending and carrying requirements identified by Dr. Jarrard, are heavy labor or manual labor positions.  Notably, the positions for which Dr. Jarrard believes David Fox would be physically qualified (*i.e.*, engineer, machinist, road master, dispatcher and clerk) do not appear, at least by job title, to involve heavy labor or manual labor.  *See id.* at 1163 n.6 (noting EEOC regulations and interpretive guidance stating that "heavy labor jobs" and "jobs that involve manual labor" are both "classes of jobs").

With respect to Shannon Fox, Dr. Jarrard averred that he was concerned about the

10

potential for injury arising out of "the need to ride on moving railcars while holding onto a ladder with one arm, a required element of a train service job."  However, he further averred that Shannon Fox would be medically disqualified from a number of other jobs at BNSF based on the "essential job elements" of those jobs, including gang trackman, maintenance section foreman, B&B mechanic/carpenter, extra gang trackman, senior special agent, patrolman and structure laborer.  Significantly, Dr. Jarrard does not aver that these positions required the need to ride on moving railcars while holding onto a ladder with one arm; he avers only that certain unidentified "essential job elements" of these positions would render Shannon Fox medically disqualified from those positions (positions which, as noted above, appear to be heavy labor or manual labor positions) as a result of his shoulder condition.  Moreover, the positions for which Dr. Jarrard believes Shannon Fox would be physically qualified (*i.e.*, engineer, machinist, road master, dispatcher, truck driver and clerk) do not appear to involve heavy labor or manual labor.

BNSF urges that it cannot be deemed to have considered each plaintiff's impairment as significantly restricting his ability to perform a "class of jobs" or a "broad range of jobs" in various classes because Dr. Jarrard avers that David Fox would be medically disqualified from less than one percent of the approximately 1100 "job titles available at BNSF."  BNSF's statistics, however, are not relevant in the absence of evidence concerning the total number of jobs (as opposed to job titles) from which plaintiffs have been deemed medically disqualified. For example, it may be that the vast majority of total jobs at BNSF are those jobs from which plaintiffs have been medically disqualified and that the remainder of the job titles from which plaintiffs have not been medically disqualified represent only a fraction of the total jobs at

11

BNSF.  Moreover, BNSF's statistics are not persuasive in the absence of evidence concerning whether the job titles from which plaintiffs have not been medically disqualified represent jobs "utilizing similar training, knowledge, skills or abilities" as the jobs from which plaintiffs have been disqualified.  *See id.*

BNSF also urges the court to follow a decision from the Western District of Oklahoma in which the district court judge granted (and the Tenth Circuit later affirmed) summary judgment in favor of BNSF on a perceived disability claim filed by the EEOC on behalf of an unsuccessful applicant for the conductor trainee position.  *See EEOC v. Burlington Northern & Santa Fe Railway Co.*, 406 F. Supp. 2d 1228 (W.D. Okla. 2005), *aff'd*, 2006 WL 3423483 (10th Cir. Nov. 29, 2006).  The factual record before the district court in that case, however, was significantly different from the record before the court here.  In the *EEOC* case, Dr. Jarrard determined that the applicant's diminished left-hand grip strength and left-arm weakness disqualified the applicant from only the train service positions, as those were the only positions that required, as an essential job function, an employee to hold on to the exterior of a moving train.  406 F. Supp. 2d at 1230-31.  In rejecting the EEOC's perceived disability claim, the district court held that "train service" jobs did not constitute a "class of jobs" such that BNSF regarded the applicant as substantially limited in the major life activity of working.  *See id.* at 1234-35.  In so concluding, the district court emphasized that BNSF determined only that the applicant could not perform a specific task (holding on to the exterior of a moving train) required by the train service positions and that BNSF did not disqualify the applicant from all jobs that might involve similar tasks, such as climbing on to a train or grasping a hand bar.  *See id.* at

12

1236.

In contrast, Dr. Jarrard, in this case, did not determine only that plaintiffs would be disqualified from "train service" jobs. Rather, he avers that plaintiffs' impairments would also disqualify plaintiffs from a number of other jobs beyond "train service" jobs. Thus, the issue before the court in the *EEOC* case–whether "train service" jobs constitute a "class of jobs"–is not the issue before the court here. Moreover, the record in this case, unlike the *EEOC* case, does not reflect that Dr. Jarrard, at least with respect to Shannon Fox, disqualified him from only those positions that required the performance of a specific task.[6] Dr. Jarrard determined that the potential for reinjury to Shannon Fox was significant due to one specific requirement of train service jobs–the need to ride on moving railcars while holding onto a ladder with one arm. Dr. Jarrard, however, further avers that Shannon Fox would be medically disqualified from certain jobs in addition to train service jobs without indicating that those jobs also require an employee to ride on moving railcars while holding onto a ladder with one arm. Dr. Jarrard simply states that the "essential job elements" of these other jobs would pose a significant risk of reinjury to Shannon Fox. For the foregoing reasons, then, the *EEOC* case is not persuasive to the court.

In sum, genuine issues of material fact exist as to whether BNSF regarded each plaintiff's impairment as significantly restricting his ability to perform both the job from which he was

---

[6]Although Dr. Jarrard avers that the "bending and carrying" required by the train service jobs would also preclude David Fox from performing other jobs that also required "bending and carrying," the *EEOC* case is still distinguishable on the grounds Dr. Jarrard disqualified David Fox from train service jobs as well as other jobs, whereas the EEOC case was limited to train service jobs.

disqualified as well as jobs utilizing similar training, knowledge, skills or abilities within his geographical area. *See EEOC v. Heartway Corp.,* 466 F.3d at 1164.[7]


**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's motion for summary judgment (doc. 22) is denied with respect to each plaintiff's claim.


**IT IS SO ORDERED.**


Dated this 22nd day of December, 2006, at Kansas City, Kansas.


<div style="margin-left:40%">

s/ John W. Lungstrum

John W. Lungstrum
United States District Judge

</div>

---

[7]To the extent that plaintiffs are also required to show that BNSF's treatment of them was "based on myth, fear, or stereotype, including concerns regarding safety, insurance, liability, and acceptance by coworkers and the public," *see Doebele v. Sprint/United Management Co.*, 342 F.3d 1117, 1133 (10th Cir. 2003) (quoting *McKenzie v. Dovala*, 242 F.3d 967, 971 (10th Cir. 2001), that requirement has been satisfied for purposes of summary judgment. A reasonable jury could certainly conclude that Dr. Jarrard's stated concerns about the risk of reinjury to plaintiffs stemmed from BNSF's desire to protect itself from what it perceived as inevitable workers' compensation claims. *See* 29 C.F.R. Pt. 1630, App. § 1630.2(l) (concern about workers' compensation costs is a recognized indicator of disability discrimination based on myth, fear or stereotype).